All right, and our last case for today is United States v. Jones v. Lange. May it please the Court, my name is Courtney Lange, and I represent the defendant, appellant Johnny Jones. Mr. Jones raises two issues in his appeal. The first is that insufficient factual findings support the district court's determinations of Mr. Jones's relevant conduct and drug quantity, and the second is that the district court erred by enhancing Mr. Jones's sentence on the basis of a co-conspirator's firearm. I'd like to begin by focusing on the lack of critical findings regarding Mr. Jones's drug quantity calculation. He was convicted of conspiracy and possession with the intent to distribute over 50 grams of methamphetamine, yet based on various additional attributions, he was ultimately sentenced with a drug quantity calculation set at 288.29 grams of methamphetamine. There is an insufficient factual basis for over 100 grams of this calculation, which impacted Mr. Jones's base offense level and the analysis of the Section 3553 factors such that a remand and resentencing is necessary. I'd like to address three components of the calculation that I believe were erroneous. The first is the conversion of $2,400 cash found on Mr. Jones at his arrest, which the district court converted to 68.04 grams of meth. Now wasn't there pretty good reason to think that that cash corresponded to the exchange that had just taken place in the parking lot? And some of those bills were even marked bills, but they see the color of the bags that are being transferred from one car to another, and he can't even make up his mind what his story is about what this cash is, whether it's about used cars or whether it's about marijuana sales, and the district judge thinks, you know, this is just all part of these methamphetamine transactions. So with regard to the cash, it's a total of $3,900 that is found in his pocket. And I think you are correct that with regards to $1,500, there's perfect clarity as to where it came from, because it's $1,500 in marked bills from a drug transaction between a co-conspirator, a miss smith, and an undercover officer. So the $1,500 is clear, but the other $2,400, which is the issue that we're raising, is not as clear, because yes, while the district court explained that a drug transaction had just occurred in the mall parking lot, and money was exchanged, baggies were tossed, officers observed this transaction from across the mall parking lot at about a 50 yards distance. The officers also testified that there was sun glare, and it's a tossing of two plastic baggies. So while we might trust their testimony that they appeared to be white, we also have to take into account the distance this is being viewed. It's a plastic bag in the sun. But isn't, I mean, the judge is looking at this as a whole, right? And these are fact calls, really. And so the judge is thinking of, you know, the context of what Mr. Jones has been doing, the fact that there's all this other meth in the cars, the fact that the bags are transferred, and the lack of any plausible explanation from Mr. Jones, whether it's the marijuana explanation or the used car explanation, that would suggest it's from any other source. So we do not contest that this amount, this $2,400, likely included some amount of drug proceeds. We do not contest that. What we contest is that the link was sufficient between his crimes of conviction and the transaction that produced the $2,400. And if I could go through some of the facts that you mentioned, first of all, in its analysis, the district court refers to the $2,400 as drug proceeds and not as methamphetamine. And I think that's problematic because we are actually converting this to grams of methamphetamine. And to generalize it by calling it drug proceeds is not clearly enough. Secondly, you mentioned the methamphetamine in the vehicle. The district court does an odd cherry picking of facts with regard to the drugs in the vehicle. There was a total of 47.1 grams of methamphetamine found in the vehicle. However, the district court doesn't clearly point out or mention that there was 53.8 grams of marijuana, which leaves open some ambiguity, a preponderance of what was in the car was marijuana and not methamphetamine. Finally, the district court points to the fact that Mr. Jones had been regularly selling methamphetamine. It can take into account the totality, but past drug sales alone are not enough to show that the transaction that produced this $2,400 was a transaction with methamphetamine. This is sentencing and this was one piece of evidence that might have supported such a finding. And besides, even if these 68 grams aren't there, the district court finds 288 grams of methamphetamine. And so you've got the 62 sold by Smith May to August. You've got the 111 August 30th. You've got the other 47 grams. Nobody cares about the 1.6, so let's not worry about that in her purse. I mean, it doesn't seem to me like a wild inference that the district court is drawing. I understand your point, and I think that where it becomes trickier is that this is not the only issue with regards to the calculation that's problematic. This represents 68.04, but there's also a second grouping that represents 31.15. When we put those two together, we are moving into a different base offense level category. So if I could talk for a moment about the 31.15, which basically is a representation. It's a component of Miss Smith's sales. You had mentioned that Miss Smith's sales were approximately 60. So this is a component between May and July 13th that is basically missing critical factual findings to support the fact that this should be attributed to Mr. Jones. So Mr. Jones is not automatically liable for every act of his co-conspirators. He was not the person selling these drugs. He is liable- And the question is, is it reasonably foreseeable? I'm sorry, Judge Roland, did you have a- No, I was going to make the same point. Correct. And so you're correct that the question is, is it within the scope of criminal activity? Is it reasonably foreseeable to him? And surely, a rational judge, this is clear error review. A rational judge could think that what Miss Roland is doing is reasonably foreseeable to him, and Smith too, for that matter. Well, what I would like to point out about this time period in particular, there is cell phone records from July 13th forward. The relevant time period in this case is May to ultimately August 30th, which is the date of arrest. Between July 13th and August 30th, there's cell phone records that show drug-related communications. There's evidence beyond Mrs. Smith's testimony to corroborate Mr. Jones's involvement in the conspiracy. There's the fact of Miss Smith asking Mr. Jones, may I be put on your payroll, which happens rather late, July 23rd. However, for the time period preceding May to July, it's firstly not clear when the conspiracy began with precision. Miss Smith never testifies to specific dates. And furthermore, to attribute all of Miss Smith's sales to Mr. Jones when she herself testified that in fact he was only sometimes present, sometimes involved in these transactions. And- But presence and involvement are two different things, surely. He doesn't have to physically be present to be involved. And yet, Miss Smith testified that she always received the drugs from Miss Roland. So, I'm not sure that it's clear for that earlier time period that Mr. Jones has the requisite level of involvement. If there are no further questions, I'll reserve my time. Thank you. That's fine. Yes, Mr. Gabrielsi. Good afternoon. May it please the court. Joel Gabriels for the United States of America. What is the best evidence that Jones was participating in a conspiracy to sell meth with Roland as opposed to Roland just selling it alone from May? I know Jones and Roland were living together, but that doesn't seem like very good evidence of a conspiracy. Do you have better evidence, for instance, did Smith ever say that Jones was involved in early transactions? Your Honor, the first part of answering that question is to look at count one of the superseding indictment, which Jones was convicted of by the jury. Jones made precisely that sort of argument that he just posed in front of the jury during trial, namely that the dealing might have been just a joint project involving Smith and Roland, not Smith and Jones. Count one charges a conspiracy from May through August of 2016. The jury found him guilty of that. Specific dates were testified to by the undercover officer. In other words, May through August. Ms. Smith did not testify to that. As to the other way to answer your question, Judge, is Smith did not specifically say those words. In other words, I get my drugs from Jones, who's a member of my conspiracy. Of course, she did not say that. When the district court at sentencing summarized his recollection of Smith's testimony, it was an accurate summary and a fair summary. The district court referred on page 25 and again pages 40 and 41 to his recollection of what Ms. Smith had testified to at trial. The judge found her to be credible. Smith's testimony on these matters is most particularly found pages 76 to 77, when she said she began to participate in dealing activities or drug dealing activities with them. She described her role in this project as hooking up buyers that she found with Jones and Roland. Pages 80 to 82, Smith testified that Jones would sometimes be present, not always, but sometimes. Jones would tell Roland to go ahead and complete a transaction. Smith would bring money back to them. Page 86, after arranging a sale with a buyer, Smith would contact either Jones or Roland, inform them that she needed methamphetamine, pick up the methamphetamine from Roland, and then physically conduct the transaction with the buyer herself. And on page 94, Smith testified that Jones and Roland both set prices and explained things. Interestingly enough, we know the most about what happens on August 30. That's when everything crumbles. That's when the best facts are available. We catch everybody in what they're doing. So we know what Jones' involvement is. We know that he's involved up to his eyeballs on that day, in contact with Smith by phone before and during the transactions, receiving the cash afterward, telling Roland, yeah, go ahead and physically turn over the drugs, what she needs. Pages 101 to 106, Smith testifies and describes her interactions with the other parties on August 30. The way that she describes her interactions with Jones and Roland are remarkably similar to how she describes her interactions during the entire pattern of the conspiracy during all of her sales to Scott. Scott, of course, is the undercover officer. In other words, Smith is a low-level drug dealer. She describes it and says, look, I get the stuff from Roland physically. I don't think that it's fair to interpret that to mean, therefore, Jones is out and Jones is not part of the source for me. The district court got it exactly right after sitting through the trial, making a finding that Smith had joined Team Jones and Team Roland, and now it was one conspiracy. There was no evidence at all at trial, and certainly none presented at sentencing, that there were multiple conspiracies that happened to involve different combinations of these characters. With respect to the cash conversion issue, $2,400 being converted to approximately 68 grams of methamphetamine. It seems very seat of the pants to me. It seems there is all this money, but there's marijuana around, there's methamphetamine around. The conversion of those dollars, if it had been in kilos or whatever, ounces, grams of marijuana, might have led to a very different outcome. It strikes me it's a very thin reed to assume that it's meth. Thank you, Your Honor. Several responses to that. First, as far as the total quantity, again, we're talking about a 200-gram threshold. Well, that may save you, but you still relied on the conversion of the cash into presumptive methamphetamine. It's 68 grams. Yes, Your Honor. To begin with, Jones offered no contrary evidence at sentencing. The evidence at trial was that Jones and the others, but Jones in particular in this case, Jones was a drug dealer and Jones was a methamphetamine dealer. That was the only evidence at trial. That was what was discussed and set forth in the pre-sentence report. That was not really objected to by Jones at sentencing. What's a street dose of methamphetamine? Is that in the record? What does 68 grams really mean? Yes, the undercover officer, Jeremiah Gauthier, the first witness, testified that in his experience, a half gram was what people would buy for an individual hit. That was the evidence at trial. It seems to me that law enforcement didn't do a good job of keeping track and marking which baggie came from her purse, which came from the back seat. Do you see that as a problem at all? I agree the record could have been cleaner on that, Your Honor. As Judge Wood already said, I propose to set aside the 1.6 grams found in Roland's purse because of the minute quantity relative to everything else. With respect to keeping track, they did a great job of keeping track. Those items were, in fact, introduced into evidence, and it's the labels on those items that make it very clear. For trial purposes, of course, the essential element— Are you saying that the markings on the fronts of the bags make it clear that the smallest bag was the one found in her purse? Yes, Your Honor, as well as Officer Nate Witeziak's testimony that there was a small amount in her purse and substantially or significantly larger amounts found in the back seat. Indeed, that seems to be conceded by Jones now on appeal. The bottom line is if you excluded the 62 grams, it's still over 200 grams. Yes, this Court would have to find that the District Court clearly erred on both the cash conversion issue and on the prior sales from Smith. With respect to the cash conversion, again, then, the argument now that the phrase drug proceeds might be insufficient to be shorthand for meth proceeds is a little bit off, Your Honors. The only thing that people were talking about at trial in the pre-sentence report and at the sentencing hearing was meth sales. Nobody was talking about heroin or cocaine or marijuana sales. In fact, Jones himself didn't say that. Not only did he offer no contrary evidence at sentencing, number one, he backed off of his implied objection when he had originally said that he sells cars to make money. He backed off of that and declined to present evidence. Indeed, he conceded at sentencing that his commission of the present crimes was based on his inability to get a legitimate job and on his need to fund his own drug use, sentencing transcript 34 and 35. And the Court made note of that claim a few pages later on 42. And further, he actually benefited from the fact that marijuana was not included, that he was not deemed to be a marijuana dealer. The pre-sentence report and the Court adopting that stayed away from calling it a marijuana significant relevant drug quantity based on his claim. It wasn't even in the PSR, was it? It was mentioned that there was marijuana found and that it would not be included in the calculations because there was no indication that he was a dealer, Your Honor. And my time is up, so thank you. All right, thank you very much. Thank you. Anything further, Ms. Long? So finally, I'd just like to state it's the District Court's responsibility to sentence based on accurate and reliable information. And I do not believe that accurate and reliable information supported the cash conversion to the 68.04 grams. While that remains above the 200-gram threshold, as pointed out in the brief, there are a number of other issues that have an insufficient factual basis that would ultimately bring the calculation down to 187.5. But even setting those aside, these determinations also weighed into the District Court's evaluation of the Section 3553 factors such that I think even if we're still above the 200, we can't say that it didn't impact the overall sentencing of Mr. Jones, who's entitled to reliable and solid evidence backing his sentence. So thank you. All right, thank you. And thank you also for accepting the Court's appointment. We appreciate your work for your client and the Court. And thank you as well to the government. We'll take the case under advisement, and the Court will be in recess.